**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| COZY COMFORT COMPANY LLC,<br>*Plaintiff*,<br>v.<br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,<br><br>*Defendants*. | Case No. 23-cv-16563<br><br>Honorable Andrea R. Wood<br><br>Magistrate Judge Maria Valdez |

**DEFENDANT JIANDAOMAOYL'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

Defendant Jiandaomaoyl ("Defendant") submits this Response in opposition to Plaintiff's Motion for Entry of a Preliminary Injunction [Dkt. #45] and accompanying documents including a Memorandum of Law in Support of Plaintiff's Motion for Entry of a Preliminary Injunction [Dkt. #45-1] (collectively, "Plaintiff's PI Motion"). Plaintiff's PI Motion should be denied because Plaintiff has not met its burden to show that a Preliminary Injunction is warranted, and the factors do not weigh in Plaintiff's favor.

## I. Background of the Suit

Plaintiff filed its Complaint [Dkt. #1] in this matter on December 6, 2023 (the "Complaint"), against one hundred and fifteen (115) named defendants. Schedule A to the Complaint [Dkt. #4] provides a list of the named defendants and a link to the Amazon Storefront for each. Defendant is number 20 (Jiandaomaoyl) on the Schedule A list. The Complaint asserts four (4) Causes of Action against all of the defendants. Specifically, Plaintiff asserted (1) "Design Patent Infringement" alleging infringement of U.S. Design Patent No. D859788 ("the '788 Patent"); (2) "Trademark Infringement and Counterfeiting" alleging infringement of U.S. Trademark Reg. No. 6018450 for THE COMFY & Design and U.S. Trademark Reg. No. 5608347 for THE COMFY (collectively, the "COMFY Trademarks"); (3) "False Designation of Origin" based on the alleged design patent infringement and trademark infringement; and (4) "Violation of Illinois Uniform Deceptive Trade Practices Act" based on the alleged design patent infringement and trademark

infringement. Accordingly, all of Plaintiff's Causes of Action rely on the alleged infringement of the COMFY Trademarks and/or the alleged infringement of the '788 Patent. However, the Complaint only includes broad allegations directed to all of the named defendants, and does not contain any evidence that Defendant actually infringes either the COMFY Trademarks or the '788 Patent.

On the same day it filed the Complaint, Plaintiff filed an "*Ex Parte* Application for Entry of a Temporary Restraining Order…" and associated documents [*see* Dkt. #s 9-17] (collectively, the "Motion for TRO"). A Minute Entry by this Court dated December 12, 2023 [Dkt. #22] set a hearing date for the TRO on December 20, 2023, even though Defendant had not yet been served with the Complaint by either date. The Moton for TRO was granted by a Minute Entry dated January 3, 2024 [Dkt. #26]. The Motion for TRO, just like the Complaint, includes only broad allegations directed to all of the named defendants, and does not contain any evidence that Defendant actually infringes either the COMFY Trademarks or the '788 Patent.

Plaintiff's PI Motion was filed on February 9, 2024, and, like both the Complaint and the Motion for TRO, is utterly devoid of any evidence that Defendant infringes either the COMFY Trademarks or the '788 Patent.

## II. Legal Standard

In order to obtain a preliminary injunction, the Plaintiff must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022). Moreover, the four factors can be divided into a two-step inquiry, with a threshold phase and a balancing phase. *See Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021). In the threshold phase, the Plaintiff must demonstrate: "(1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied.'" *Id*. (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). If the Plaintiff successfully makes the required threshold showing in the first phase (likelihood of success and lack of adequate remedy at law), then the Court proceeds to the second phase, the balancing phase, where it considers: "'(3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving

party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties.'" *Id*. at 545 (quoting *Abbott Labs.*, 971 F.2d at 11). A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020). To obtain such drastic relief, the party seeking the relief must carry the burden of persuasion by a clear showing. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

Regarding factors, particularly the first factor of likelihood of success on the merits, the requirements that Plaintiff must meet differ based on the Cause of Action.

For design patent infringement, "a **movant cannot be granted a preliminary injunction unless it establishes both of the first two factors**, i.e., likelihood of success on the merits and irreparable harm." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)(emphasis added); *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.,* 141 F.3d 1084, 1088 (Fed. Cir. 1998). "'To show infringement under the proper test, [a plaintiff must demonstrate that] an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design.'" *ABC Corp. I,* 52 F.4th at 941 (quoting *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010)). Accordingly, in order to establish likelihood of success on the merits, Plaintiff must provide the Court with sufficient evidence to "conduct a three-way analysis comparing the accused product, the patented design, and the prior art." Id. at 942; *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008) (*en banc*)("When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art"). Plaintiff has not made even a cursory attempt to provide sufficient evidence for the required three way analysis.

Further, in order to demonstrate a likelihood of success on the merits, Plaintiff must show both that it will likely prove that Defendant infringes the '788 Patent, and that Plaintiff will likely withstand Defendant's challenges to the validity and enforceability of the '788 Patent. *Amazon,* 239 F.3d. at 1350 (citing *Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 (Fed. Cir. 1997)); *see also Metalcraft of Mayville, Inc. v. The Toro Co*., 848 F.3d 1358, 1364 (Fed. Cir. 2017). If Defendant "raises a substantial question concerning either infringement or validity, i.e., asserts an infringement or invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue." *Amazon,* 239 F.3d. at 1350.

For trademark infringement, "the plaintiff must show that its mark is protected under the Lanham Act and that **the challenged mark is likely to cause confusion** among consumers." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000)(emphasis added). There are seven factors that must be considered in the likelihood of confusion test:

(1) similarity between the marks in appearance and suggestion;
(2) similarity of the products;
(3) area and manner of concurrent use;
(4) degree of care likely to exercised by consumers;
(5) strength of complainant's mark;
(6) actual confusion; and,
(7) intent of defendant to palm off his product as that of another.

*Id*. at 1043-1044 (quoting *Rust Env't & Infrastructure Inc.*, 131 F.3d at 1216 (7th Cir. 1997)). "In determining whether to grant a preliminary injunction, the district court must weigh the evidence pertaining to each likelihood of confusion factor and balance the seven factors against each other." *Id*. at 1044. In deciding whether to grant a preliminary injunction in a trademark case, "[w]hen a district court evaluates the likelihood of confusion, 'the actual and reasoned weighing of the evidence is imperative and is inherent in a meaningful exercise of discretion.'" *Id.* (quoting *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1185 (7th Cir. 1989)). Plaintiff has not submitted any evidence to even identify any mark used by Defendant that would qualify as a "challenged mark," much less showing any likelihood of confusion that would be caused by such a mark.

For the remaining causes of action, which both rely on the alleged trademark infringement and design patent infringement, there cannot be any likelihood of success absent a showing of such likelihood with respect to the alleged trademark infringement and design patent infringement. Neither the Motion for TRO nor Plaintiff's PI Motion rely on any other assertions in support of a likelihood of success on the merits.

## III. Plaintiff's Motion Must Be Denied Because Plaintiff Has Not Met Its Burden To Show A Likelihood of Success On The Merits

In order to show a likelihood of success on the merits, the Plaintiff bears the burden of providing evidence to the Court that is sufficient to a likelihood of success on the merits given the required considerations for the Cause of Action, and a preliminary injunction granted without proper evidence and consideration is subject to being reversed. *See ABC Corp. I,* 52 F.4th 934

(Federal Circuit reversing grant of preliminary injunction in a design patent case from the Northern District of Illinois, Eastern Division due to lack of proper analysis and insufficient evidence); *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041 (7th Cir. reversing grant of trademark preliminary injunction granted by Northern District of Illinois, Eastern Division due to lack evidence on the record to support a preliminary injunction). The Plaintiff has had at least three opportunities to provide such evidence to this Court with respect to its allegations that Defendant has infringed the COZY Trademarks and the '788 Patent, and the Plaintiff has utterly failed to do so in each instance. Plaintiff has not met its burden of a threshold showing of likelihood of success on the merits, and the Plaintiff's PI Motion must be denied.

### A. The Complaint Does Not Provide Any Evidence Against Defendant In Support of Plaintiff's Allegations

The Complaint contains only broad generalizations and accusations directed against all of the named defendants, with no evidence provided as a foundational basis for any of them. The only connection between the allegations in the Complaint and the Defendant is provided in Schedule A to the Complaint, which was filed under seal, and is limited to the Defendant's name and a link to Defendant's Amazon storefront [Dkt. #4 p. 2 at number 20 (Jiandaomaoyl)].[1] The link provided in Schedule A provides a view of Defendant's Amazon storefront, which is a general page that does not contain any product information (Exhibit A). There is thus no evidence, and no analysis thereof, provided in the Complaint showing that Defendant uses any trademark that would be confusingly similar the COMFY Trademarks or that Defendant sells any product that would infringe the '788 patent.

### B. The Motion for TRO Does Not Provide Sufficient Evidence to Support a Conclusion of Likelihood of Success on the Merits

The Motion for TRO, which was filed, argued and decided entirely *ex parte*, does not provide any discussion or analysis supporting a conclusion that Plaintiff is likely to succeed in showing that Defendant has infringed the COZY Trademarks or the '788 Patent. The Motion for TRO merely asserts that "The submitted documentation shows that an ordinary observer would be deceived into thinking that the Counterfeit Products are the same as Plaintiff's COMFY products utilizing the COMFY Patent" [Dkt. #9 at p. 14] and cites to the Declaration of Michael Speciale (Cozy CEO) at paragraph 14.

---

[1] The "Exemplary" product shown in Paragraph 40 of the Complaint is not a product sold by Defendant.

However, paragraph 14 of the Declaration of Michael Speciale does not contain any such showing [Dkt. #12 at para. 14]. Instead, paragraph 14 of the Declaration of Michael Speciale cites to an Exhibit 3 [Dkt. #s 13 to 13-10, 14 to 14-9, 15 to15-9, 16 to 16-9, and 17 to 17-2], which is a forty-three (43) part Exhibit consisting of hundreds of pages without any sort of guide as to what pages relate to what named defendants, providing a collection of screenshots of websites that Michael Speciale declares are "True and correct copies of screenshot printouts showing the active Defendant Internet Stores reviewed, as well as screenshot printouts confirming the ability to order and ship Counterfeit Products to Illinois" [Dkt. #12, Declaration of Michael Speciale at para. 14]. Paragraph 14 of the Declaration of Michael Speciale also provides a broad and unreasoned blanket representation that his investigation, consisting of him or someone working under his direction conducting a "visual inspection of the products listed for sale on each e-commerce store" [Id.], "determined that Counterfeit Products were being offered for sale" [Id.]. Notably, the Declaration of Michael Speciale does not share any of his analysis or explain the basis for any of his determinations. A collection of hundreds of pages of screenshots (the vast majority of which have nothing at all to do with Defendant) and a single blanket statement are simply not sufficient evidence to support any sort of analysis regarding likelihood of success on the merits against Defendants for any of the Causes of Action.

Regarding the alleged infringement of the design claimed in the '788 Patent, the few pictures form the '788 patent and single photo of an "Exemplar of Counterfeit Products" at pp. 14-16 of the Motion for TRO are also not sufficient evidence to support any sort of analysis regarding likelihood of success on the merits against Defendants for any of the Causes of Action, only partly because the product shown is not one of Defendant's products. There is no prior art shown, and no analysis conducted under the ordinary observer test, as is required. *ABC Corp. I,* 52 F.4th at 941. Accordingly, Plaintiff has failed to meet its burden in showing any likelihood of success on the merits with respect to any Cause of Action related to the alleged infringement of the design claimed in the '788 Patent.

Regarding the alleged trademark infringement, Plaintiff purports to walk through the likelihood of confusion factors in broad generalizations, but completely fails to identify any trademark that Defendant uses that is alleged to be confusingly similar. Instead, Plaintiff once again simply makes a broad, completely unsupported, assertion that "The Defendants are selling Counterfeit Products using counterfeit marks identical to or substantially indistinguishable from

the COMFY Trademarks" [Dkt. #9 at p. 18]. In the absence of the identification of any mark used by Defendant and an analysis of likelihood of confusion with respect to that particular mark, Plaintiff has failed to meet its burden in showing any likelihood of success on the merits with respect to any Cause of Action related to the alleged trademark infringement. *See Barbecue Marx,* 235 F.3d at 1043.

Even if this Court were inclined to wade through Exhibit 3 to the Declaration of Michael Speciale to conduct its own analysis, which would improperly obviate the Plaintiff's burden of persuasion in this matter, the screenshots that appear to be most relevant to Defendant, [Dkt. # 13-6 at pp. 11-19][2], do not include sufficient evidence to show that Plaintiff has any likelihood of success on the merits for any of the Causes of Action. For example, there are no trademarks on the provided screenshots[3] that would be even arguably confusingly similar to either of the COMFY Trademarks (Id.). As another example, no comparison is made at all between the Defendant's product and the design claimed in the '788 patent, much less any such comparison that would be appropriate under the ordinary observer test.

With respect to Plaintiff's other Causes of Action, namely alleged violations under False Designation of Origin and the Illinois Uniform Deceptive Trade Practices Act, the Motion for TRO relies solely upon assertions that they are likely to succeed on the merits of those claims because they are likely to succeed on the merits of the assertions of trademark and design patent infringement [Dkt. #9 at p. 20]. Plaintiff does not provide any evidence that would separately support a finding of likelihood of success on the merits for either of those Causes of Action. Accordingly, because Plaintiff has failed to show a likelihood of success on the merits with respect to either trademark infringement or design patent infringement, Plaintiff has also failed to show a likelihood of success on the merits for either of its other Causes of Action.

### C. The Plaintiff's PI Motion Does Not Provide Sufficient Evidence to Support a Conclusion of Likelihood of Success on the Merits

The Plaintiff's PI Motion fails to provide any evidence or analysis required to support the requested preliminary injunction. Instead, Plaintiff has merely taken the position that:

> Here, by virtue of this Court's entry of the TRO, it already found that the above requirements have been satisfied based on the initial pleadings. Despite notice

---

[2] This identification is based on the "sold by" info under the "Add to Cart" and "Buy Now" button on the right-most column, and should not be construed as an admission by Defendant.

[3] Moreover, Plaintiff certainly has not met its initial burden of identifying any accused trademarks.

> having been given, no Defendants have appeared or challenged any of the well-pleaded allegations in Plaintiff's Complaint and supporting materials.

[Dkt. #45-1 at p. 9]. However, the Court's *ex parte* ruling on the Motion for TRO does not result in *res judiciata* against Defendant. The shortcomings in the Motion for TRO are discussed above, and the error in granting that motion should not now be compounded with respect to Plaintiff's PI Motion. Moreover, Plaintiff was also incorrect regarding the appearance of Defendant. Two counsel for Defendant filed an appearance on January 31, 2024, more than a week prior to the February 9, 2024 filing date of Plaintiff's PI Motion.

Plaintiff's failure to provide any evidence or even a basic attempt to show that it has any likelihood of succeeding on the merits with respect to any trademark used or product sold by Defendant is a fatal flaw in Plaintiff's PI Motion, and the preliminary injunction should therefore be denied.

## IV. The Preliminary Injunction Must Be Denied Because the '788 Patent Is Invalid

The Plaintiff has no likelihood of success on the merits with respect to its assertion of design patent infringement because the '788 patent is invalid as being directed to functional subject matter.[4] The design claimed in the '788 Patent is directed to an oversized hoodie, with no ornamentation. Hoodies are old and well-known in the art. In general, a hoodie is an article of clothing that has features including: a hood, a torso, long sleeves that are tighter at the wrists, and a marsupial pocket. Each of the features of a hoodie is functional in nature, and the structure of those features is dictated by how the article is worn and used.

A design patent may be granted to protect "''any new, original and ***ornamental*** design for an article of manufacture...." *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1315 (Fed. Cir. 2013)(quoting 35 U.S.C. § 171 (emphasis added in original)). Accordingly, "a design patent will protect only 'the non-functional aspects of an ornamental design as seen as a whole and as shown in the patent.'" *Amini Innovation Corp. v. Anthony California, Inc.,* 439 F.3d 1365, 1370-71 (Fed.Cir. 2006) (quoting *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450 (Fed.Cir.1993)); *see also Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.,* 501 F.3d 1314, 1319 (Fed.Cir.2007) ("If the design is dictated by performance of the article, then it is

[4] As at least one other named defendant has pointed out, the '788 patent is likely invalid based on being anticipated or rendered obvious by prior art as well, but Defendant reserves its arguments on that defense.

judged to be functional and ineligible for design patent protection"); *Seat Sack, Inc. v. Childcraft Educ. Corp.,* 2010 WL 245576, at *14 (S.D.N.Y. Jan. 22, 2010)("Design patents are narrow in scope in that they are strictly limited to what is shown in the drawings and only protect the novel, ornamental aspects of the design as shown in the patent). "Based on this requirement, a design patent can be declared invalid if the claimed design is 'primarily functional' rather than 'primarily ornamental,' i.e., if 'the claimed design is 'dictated by' the utilitarian purpose of the article.'" *Amini Innovation,* 439 F.3d at 1370-71.; *see also Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed. Cir. 1986). Moreover, it is improper to grant a preliminary injunction when there is a likelihood that the asserted design patent is invalid. *Power Controls*, 806 F.2d at 240 (vacating preliminary injunction for design patent infringement due to evidence of functionality of asserted design).

In determining whether a deign patent is invalid, the court should consider:

> (1) the existence of a utility patent disclosing the utilitarian advantages of the design; (2) advertising materials in which the originator of the design touts the design's utilitarian advantages; (3) the availability to competitors of functionally equivalent designs; and (4) facts indicating that the design results in a comparatively simple or cheap method of manufacturing the product.

*Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1276 (Fed.Cir.2002) (quoting *In re Morton–Norwich Prods., Inc.,* 671 F.2d 1332, 1340–41 (C.C.P.A.1982)). As discussed below, at least the first three factors weight heavily in Defendant's favor.[5] Thus, the '788 Patent is likely invalid.

### A. Plaintiff's Utility Patent Shows that Every Feature of the Design is Functional

Plaintiff has a utility patent, U.S. Patent No. 10420431 ("the '431 Patent")(Exhibit B), directed to the same subject matter claimed in the '788 Patent, in which the functionality of every feature of the design is described.

The '431 Patent was filed on September 13, 2018, and claims the benefit of two Provisional Patent Applications. The first Provisional application, U.S. Provisional Patent Application No. 62/558,136 ("the '136 Application") (Exhibit C), was filed on September 13, 2017 (Exhibit C at p. 23), the same day that the design application was filed that resulted in the '788 Patent [Dkt. #1-1 at p. 1]. The title of the '136 Application is "Enlarged Over-Garment With An Elevated

[5] Defendant reserves argument on the final factor, given that this case is in the preliminary stages and there has been no discovery.

Marsupial Pocket" (Exhibit C at p. 23), which is the exact same title as the '788 Patent [Dkt. #1-1 at p. 1]. The '136 Application also includes the exact same figures as the '788 Patent, with reference numbers added throughout, texture added to the interior in Figure 1, and a dotted line representation of a person's body within the garment in Figure 10 (*compare* Exhibit C at pp. 15-21 to [Dkt. #1-1 at pp. 3-10]). The second Provisional application, U.S. Provisional Patent Application No. 62/671,417 ("the '417 Application") (Exhibit D), was filed on May 14, 2018, and entitled "Elongated And Enlarged Over-Garment With An Elevated Marsupial Pocket" (Exhibit D at p. 23). Interestingly, a couple weeks earlier, on April 30, 2018, Plaintiff filed U.S. Design Patent Application No. 29/645978, which later issued as U.S. Design Patent No. D886416 ("the '416 Patent")(Exhibit E), which has not been asserted in this case. The '417 Application includes the exact same figures as the '416 Patent, with reference numbers added throughout and a dotted line representation of a person's body within the garment in Figure 10 (*compare* Exhibit D at pp. 15-22 to Exhibit E at pp. 4-11).

The '431 Patent combined the two Provisional applications, and slightly modified the Figures. With respect to the first embodiment, Plaintiff slightly shortened the height of the pocket and created an exaggerated lengthening of the back hem as compared to the front hem. Those slight differences, however, do not detract from the fact the every feature of the design claimed in the '788 Patent is functional, especially because the '136 Application included the exact same figures as the '788 Patent and also described every feature therein as being functional in substantially identical language. The description of the functionality of the design features is set forth in Exhibit F, attached hereto, which includes side-by-side quotes of both the '431 Patent and the '136 Application. The functional features of the design include: the oversized dimensions, the length of back hem being longer than front hem, the large sleeve openings, the marsupial pocket shape, and the marsupial pocket location.

As shown in Exhibit F, it is clear that every single feature of the design claimed in the '788 Patent is functional. As such, there are no features of the '788 Patent that are ornamental, and this factor weighs in favor of Defendant.

**B. Plaintiff Advertises the Functionality of the Design Features**

The functionality of the features of the design claimed in the '788 Patent are advertised by the Plaintiff, so Plaintiff cannot assert that they are ornamental. The Plaintiff asserts that "The

Comfy Original and The Comfy Original Jr. are protected by U.S. Patents Nos. 10,420,431, D859,788, and D969,458" (Exhibit G).

The Plaintiff advertises the functionality of the design features of the The Comfy Original on its website (*see* Exhibit H). For example, the Plaintiff advertises that The Comfy Original is a "huge one-size-fits-all design" and that it lets "you stay warm and cozy whether you're at home or on the go" (Exhibit H at p. 1). In its product details, Plaintiff also advertises the functionality of the low-high hem, the hood, the pocket shape and size, the sleeve design, and the sizing:

- Oversized Everything: It's giant, and its supposed to be… The low-high hem also means its longer in the back for extra comfort.
- Huge Plush Hood: Keeps your head cozy and can even double as a pillow.
- Ginormous Pocket: The Marsupial™ pocket—with its giant size and unique shape—keeps your hands warm and can store all your essentials. (Snacks, phone, pets—you name it!).
- Ribbed Cuffs and Oversized Sleeves: Roll 'em up and they stay up! Plus, our oversized sleeves are designed so you can easily pull your arms in to cover yourself completely. Did someone say total coziness?
- Sizing: One Size for men, women and even kids! Top to bottom it's 38" in the front, and 42.5" in the back.

(Exhibit H at pp. 2-3).

On Amazon®, the Plaintiff also advertises the functionality of the features of The Comfy Original. For example, Plaintiff advertises that The Comfy Original is "Designed to allow you to pull in your legs and provide total coverage, The Comfy is oversized with a giant hood, marsupial pocket, oversized sleeves with cuffs and a high-low hem" (Exhibit I at p. 3). Plaintiff also provides a video on Amazon® that describes the features of the The Comfy Original as being functional (screenshots from the video with the original closed captioning are provided in Exhibit J). The video advertises the functionality of the low-high hem, the hood, the pocket shape and size, the ribbed cuffs, the sleeve design, and the sizing:

- Oversized… single size that fits just about everyone.
- The low-high hem is there for extra comfort.
- The huge, plush hood keeps your head warm and can even double as a pillow.

- Our ginormous marsupial pocket, with its giant size and unique shape, keeps your hand warm and serves as a home for essentials as big as a tablet.
- The Comfy Original's ribbed cuffs keep your hands free so your warmth can go with you no matter what you're doing.
- [T]he oversized sleeves let you pull your arms all the way in.

(Exhibit J at pp. 1-7).

Based on the Plaintiff's advertising, it is clear that Plaintiff touts the functional features of the product design that is claimed in the '788 Patent, and this factor weighs in favor of Defendant.

**C. There are Not Functionally Equivalent Designs Available to Competitors**

As discussed above, the design claimed in the '788 Patent is an oversized hoodie, and each feature is dictated by its functional nature.

A functionally equivalent design that would be available to a competitor would necessarily not infringe the design claimed in the '788 patent. However, in filing its Complaint, against over 100 Defendants that have various product designs, Plaintiff is clearly attempting to assert a scope of its design that would encompass any variation of an oversized hoodie, thus leaving no functionally equivalent designs available to competitors.

Additionally, Plaintiff would likely argue that the product design shown in Figures 1-10 of the '431 Patent infringes the design claimed in the '788 Patent, even though there are differences in the pocket shape and the shape of the back hem. So, the design in the '431 Patent would not be a functionally equivalent design available to competitors. If Plaintiff disagrees, then they must admit that making such seemingly minor changes to the product design results in non-infringement of the '788 Patent.[6]

Accordingly, this factor weighs in favor of Defendant.

Because each of the factors discussed above weighs in favor of Defendant, it is clear that the design claimed in the '788 Patent is improperly primarily, if not completely, directed to functional features, and is the '788 Patent is therefore invalid.

---

[6] Such a position would necessarily result in a conclusion that Defendant's product design also does not infringe the design claimed in the '788 Patent.

## V. Conclusion

For the foregoing reasons, Plaintiff has failed to meet its burden of showing a likelihood of success on the merits with respect to any of its asserted Causes of Action, and the arrested '788 Patent is invalid. Defendant respectfully requests that this Court immediately dissolve the Temporary Restraining Order currently in place and deny Plaintiff's PI Motion.

Respectfully submitted,

AMUNDSEN DAVIS, LLC

Dated: February 28, 2024

/s/ Gary Zhao
Gary Zhao
Attorney for the Defendant

AMUNDSEN DAVIS, LLC
Gary Zhao, Esq. (ARDC #6279527)
Jenifer Lacroix (ARDC #6272578)
Rachel Zhou (ARDC #6344383)
150 N. Michigan Ave., Ste. 3300
Chicago, IL 60601
(312) 894-3377 – Telephone
gzhao@amundsendavislaw.com
jlacroix@amundsendavislaw.com
rzhou@amundsendavislaw.com

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on February 28, 2024 that true and correct copies of DEFENDANT JIANDAOMAOYL'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION, each of the exhibits thereto, and the Declaration of Jennifer Lacroix in support thereof, were filed electronically with the Clerk of the Court and served on all counsel of record.

Respectfully submitted,

*/s/* Gary Zhao
One of Attorneys for Defendant

AMUNDSEN DAVIS, LLC
Gary Zhao, Esq. (ARDC #6279527)
150 N. Michigan Ave., Ste. 3300
Chicago, IL 60601
(312) 894-3377 – Telephone
gzhao@amundsendavislaw.com