**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| COZY COMFORT COMPANY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-cv-16563 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THE INDIVIDUALS, CORPORATIONS | ) | |
| LIMITED LIABILITY COMPANIES, | ) | |
| PARTNERSHIPS, AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE A | ) | |
| TO THE COMPLAINT, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Cozy Comfort Company LLC ("Cozy Comfort") sells "The Comfy," an oversized hooded sweatshirt that functions as a wearable, full-body blanket. Cozy Comfort has two registered trademarks related to "The Comfy," as well as a patent for the design of its product. According to Cozy Comfort, the numerous Defendant online retailers listed in Schedule A attached to its complaint have infringed on its trademarks and design patent, in violation of 15 U.S.C. § 1114 and 35 U.S.C. § 271. This Court previously issued a temporary restraining order ("TRO") that, among other things, prohibits Defendants from continuing their allegedly infringing activities, disables their internet stores, and freezes their stores' accounts. Cozy Comfort now has filed a motion for a preliminary injunction. (Dkt. No. 45.) While many of the Schedule A Defendants have failed to appear and are now in default ("Defaulting Defendants"), several have appeared through counsel to oppose Cozy Comfort's requested preliminary injunction. Having considered the parties' briefing and oral argument, the Court grants Cozy Comfort's motion in part and denies it in part.

## BACKGROUND

Cozy Comfort sells an oversized hooded sweatshirt, or hoodie, under the name "The Comfy." As described in Cozy Comfort's complaint, "the COMFY Hoodie is the world's first of its kind wearable blanket letting you stay warm and cozy whether you're at home or on the go." (Compl. ¶ 15, Dkt. No. 1.) Cozy Comfort has registered two trademarks related to "The Comfy": Trademark Registration Nos. 5,608,347 and 6,018,450. In addition, Cozy Comfort owns a design patent for its "The Comfy" hoodie. Specifically, Patent No. D859,788 S ("'788 Patent") claims "[t]he ornamental design for an enlarged over-garment with an elevated marsupial pocket." (Compl., Ex. 1, Dkt. No. 1-1.) Figure 1 depicts the claimed design:



FIG. 1

Cozy Comfort alleges that Defendants listed in Schedule A attached to its complaint operate fully interactive e-commerce stores that offer for sale and sell counterfeit "The Comfy" hoodies to consumers in Illinois and throughout the United States. (Compl. ¶ 24.) Cozy Comfort

further claims that many Defendants reside in China and undertake various efforts to conceal their identities. (*Id.* ¶¶ 22, 33.) According to Cozy Comfort, Defendants employ a variety of tactics to evade intellectual property enforcement efforts, such as moving the funds in their e-commerce accounts to bank accounts outside the jurisdiction of U.S. courts. (*Id.* ¶¶ 37, 41.) Based on these claims, shortly after initiating this action, Cozy Comfort filed an *ex parte* motion for a temporary restraining order, which the Court granted. Among other things, the temporary restraining order enjoins Defendants from further infringing Cozy Comfort's patent and trademarks, and it directs the various online marketplace platforms that host Defendants' internet stores to locate the accounts and funds connected to Defendants' stores and to restrain and enjoin any transfer or disposition of the funds in those accounts. (TRO, Dkt. No. 29.) At the same time, the Court also authorized service of process by email and electronic publication.

Cozy Comfort's motion for a preliminary injunction is now before the Court. Multiple Defendants have appeared and ask the Court to deny Cozy Comfort its requested preliminary injunction. Defendants opposing the entry of a preliminary injunction include: Premier P. Ltd d/b/a Vanilla Underground ("Vanilla Underground"), Geruitejia, Jiandaomaoyl, yescool, Haixuemaoyi, Très Chic Mailanda, ZC Home Fashion, FSLK, Lovebedding, Liny-US, JiAmy Co. ltd., Wenlia a/k/a Ehey-EU, and Cozy Bliss (collectively, "Opposing Defendants").[1] Each Opposing Defendant has filed a brief in opposition to Cozy Comfort's requested preliminary injunction.[2] In addition to receiving their briefs and supporting exhibits, the Court also heard oral

---

[1] In the same order, those Defendants are listed in Schedule A at the following numbers: 41, 17, 20, 49, 18, 39, 50, 96, 25, 24, 102, 44, and 12. (Dkt. No. 4.)

[2] Lovebedding, Liny-US, JiAmy Co. ltd., and Wenlia a/k/a Ehey-EU filed a joint opposition brief.

argument from Cozy Comfort and Opposing Defendants. The parties declined the opportunity for an evidentiary hearing, agreeing that such a hearing was unnecessary.

## DISCUSSION

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). Determining whether a party is entitled to injunctive relief entails a two-step analysis. *Id.* At the first step, the moving party "must make a threshold showing that: (1) absent preliminary injunctive relief, [it] will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) [it] has a reasonable likelihood of success on the merits." *Id.* at 661–62. "If the plaintiff fails to meet any of these threshold requirements, the court must deny the injunction." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019). If the moving party makes its threshold showing, a district court then "proceeds to a balancing analysis, where the court must weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the defendant if the court were to grant it." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Also considered in the balancing analysis is the public interest, meaning "the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties." *Turnell*, 796 F.3d at 662. "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Id.*

## I.      Likelihood of Success on the Merits on Patent Infringement Claim

The Court begins by considering Cozy Comfort's likelihood of success on the merits of its claims. This threshold requirement for a preliminary injunction "is often decisive." *Doe v. Univ. of S. Ind.*, 43 F.4th 784, 791 & n.4 (7th Cir. 2022) (internal quotation marks omitted). Although the plaintiff "need not show that it will definitely win the case" to demonstrate a likelihood of success on the merits, it nonetheless "bears a significant burden." *Ill. Republican*

*Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Such a showing does not require "proof by a preponderance," but normally the plaintiff must at least show how it "proposes to prove the key elements of its case." *Id. See also Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023). What is clear is that "the mere possibility of success is not enough," nor is "a 'better than negligible' chance." *Ill. Republican Party*, 973 F.3d at 762.

In its complaint, Cozy Comfort asserts four claims against Defendants: design patent infringement under 35 U.S.C. § 271, trademark infringement under 15 U.S.C. § 1114 of the Lanham Act, false designation of origin in violation of 15 U.S.C. § 1125(a) of the Lanham Act, and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*[3] At the preliminary injunction hearing, Cozy Comfort confirmed that its motion for a preliminary injunction is based solely on its patent infringement claims and thus it does not seek a determination as to its likelihood of success on the Lanham Act and Illinois state-law claims. Accordingly, the Court's analysis focuses on the patent infringement claims only.

In considering the merits of Cozy Comfort's patent infringement claims, the Court looks to substantive precedent from the Federal Circuit. *E.g.*, *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1400 (Fed. Cir. 2022) ("Although we review a district court's grant of a preliminary injunction under the law of the regional circuit, we give dominant effect to the Federal Circuit precedent insofar as it reflects considerations specific to patent issues. Whether a patentee has shown a likelihood of success on the merits is one such area where we apply our own law, as it is a question specific to patent law." (internal quotation marks and citations omitted)); *Techtronic Indus. Co. v. Chevron Holdings, Ltd.*, 395 F. Supp. 2d 720, 724 n.3 (N.D. Ill. 2005) ("The law of

---

[3] Cozy Comfort has since stipulated to the dismissal of the trademark infringement and false designation of origin claims with respect to Vanilla Underground. (Dkt. No. 142.)

the Federal Circuit Court of Appeals governs the issuance of preliminary injunctions in patent infringement cases."). To establish a likelihood of success on the merits, the Federal Circuit requires that a patent holder "show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). However, where a patent owner "raises a substantial question concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the patentee cannot prove lacks substantial merit, the preliminary injunction should not issue." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001) (internal quotation marks omitted).

Here, Opposing Defendants deny that they infringed Cozy Comfort's '788 Patent and challenge the validity of that design patent. As to validity, the Court observes that the '788 Patent recently survived an invalidity challenge in another district, where a jury rendered a verdict in favor of Cozy Comfort on the matter. *See Top Brand LLC v. Cozy Comfort Co. LLC*, No. 2:21-cv-00597-SPL (D. Ariz. Apr. 26, 2024), ECF No. 378. For purposes of a preliminary injunction, a patentee may defeat an invalidity challenge by showing that the patent in suit "successfully withstood previous validity challenges in other proceedings." *Amazon.com*, 239 F.3d at 1359. Thus, the Court finds that the jury's verdict in the District of Arizona suffices to show Cozy Comfort's likelihood of success on the merits of a challenge to the validity of the '788 Patent.[4]

---

[4] It appears the primary validity question presented to the *Top Brand* jury was whether the '788 Patent's claimed design was invalid as "obvious." Subsequent to the jury's verdict, the Federal Circuit, sitting *en banc*, overruled its previous test for obviousness, finding it to be "improperly rigid" and adopting a "more flexible approach." *LKQ Corp. v. GM Glob. Tech. Operations LLC*, No. 2021-2348, 2024 WL 2280728, at *5 (Fed. Cir. May 21,2024). The *Top Brand* jury was instructed based upon the then-governing more "rigid" test, and thus it is possible that the jury would have decided the question differently under *LKQ*

Cozy Comfort's likelihood of successfully proving each Opposing Defendant's infringement requires greater consideration. "Design patent infringement occurs when a party, without license of the owner, (1) applies the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied." *ABC Corp. I v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022). The key question is whether, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (internal quotation marks omitted). The patentee has the burden of proving infringement of a design patent by a preponderance of the evidence. *Id.*

At the outset, it is clear the designs Cozy Comfort accuses of infringing the '788 Patent vary significantly. Not all Defendants sell oversized hoodies with an identical design; instead, there are potentially significant differences among the products. For example, the accused designs differ with respect to their lengths and the size and location of their pockets. These differences matter. Yet, in arguing for a preliminary injunction, Cozy Comfort does not distinguish between accused designs but instead suggests that they all infringe its patent because they all consist of oversized hoodies (or "wearable blankets") with a marsupial pocket. This Court, however, must "apply the ordinary observer test on a ***product-by-product*** basis," a task

---

*Corp.*'s more flexible analysis. For present purposes, this Court declines to speculate on whether the jury's verdict would be different under the new standard.

that is "particularly important here in light of significant differences among the accused products themselves." *ABC Corp. I*, 52 F.4th at 943 (emphasis added). It is therefore notable (and problematic) that Cozy Comfort initially argues infringement in its opening brief by reference to a single exemplar—not even specifying which Defendant allegedly sold that product—and only engages in cursory individualized analyses in its reply briefs. Cozy Comfort's lax approach to establishing its likelihood of success on its claims of design patent infringement mirrors its loose application of joinder rules to assert so many claims against so many Defendants in one case, a matter the Court discusses further below.

Nonetheless, after reviewing the record, the Court finds that Opposing Defendants raise substantial questions concerning whether many of their designs infringe the '788 Patent. Considered together, despite their individual variations, the accused designs are not plainly dissimilar or distinct from the patent in suit: each consists of an oversized hoodie with a marsupial pocket. The Federal Circuit has explained that "[i]f the claimed and accused designs are not plainly dissimilar, the [court's] inquiry may benefit from comparing the claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." *Ethicon*, 796 F.3d at 1335. Indeed, "[w]hen the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer," *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008).

Opposing Defendants note that "The Comfy" is not the first wearable blanket and builds off the design of an ordinary hoodie. Some examples of prior art referenced by Opposing Defendants include the following:



(Def. Vanilla Underground's Opp'n to Mot. for Prelim. Inj., Ex. 2, Dkt. No. 55-2.)



(*Id.*)



(Def. FSLK's Opp'n to Mot. for Prelim. Inj., Ex. 5, Dkt. No. 89-5.) Given the existence of similarly designed hoodies and wearable blankets that predate "The Comfy," the Court finds that an ordinary observer would pay closer attention to differences that might otherwise appear minor in the absence of prior art.

Further, some of the otherwise minor differences are exactly the differences that Cozy Comfort emphasized in its prosecution of the '788 Patent to distinguish the claimed design from the prior art. As demonstrated by the prosecution history, Cozy Comfort's claim was originally rejected because it was deemed too similar to U.S. Patent No. D728,900, which covers a design for a conventional hoodie-style sweatshirt (the "White hoodie"), as depicted here:



(FSLK's Opp'n to Mot. for Prelim. Inj., Ex. 4, Dkt. No. 82-4.) To overcome that initial rejection, Cozy Comfort highlighted three differences between its claimed design and the prior art related to the pocket. First, Cozy Comfort noted that the "marsupial pocket in the claimed design is much higher on the torso" as compared to the White hoodie. (FSLK's Opp'n to Mot. for Prelim. Inj., Ex. 6, Dkt. No. 82-6.) It provided the following visual comparison:



(*Id.*) Similarly, Cozy Comfort posited that the marsupial pocket in its claimed design is above the bottom of the torso, such that "a significant portion of the front of the torso is clearly visible between the bottom of the marsupial pocket and the bottom of the torso." (*Id.*) It provided this visualization of the difference:



(*Id.*) Cozy Comfort further noted that the marsupial pocket for its claimed design is narrower than the prior art, as shown here:



(*Id.*)

Next, Cozy Comfort highlighted that the sleeves on its design are larger than the sleeves of a conventional hoodie. That difference is illustrated here:

11



(*Id.*)

Finally, Cozy Comfort argued that the bottom hem of its claimed design features a downward slope whereas the prior art shows an upward slope, providing the following comparison:



(*Id.*)

Thus, the minor differences Cozy Comfort now dismisses as unimportant mattered a great deal when Cozy Comfort sought to distinguish its design from the prior art. Likewise, those differences may prove important to an ordinary observer comparing the claimed design and the accused products.

Turning to Opposing Defendants' accused products, two Opposing Defendants sell the same product that does not appear to differ significantly from the '788 Patent. Below is a

comparison of the accused product sold by both Geruitejia and Jiandaomaoyl against the patented design:



(Pl.'s Reply to Doe Nos. 17, et al. at 4, Dkt. No. 112.) This accused product appears to contain all the characteristics of the patented design, from the size and location of the pocket to the downward sloping hem. Even a cursory visual analysis demonstrates that Cozy Comfort has some likelihood of success on the merits as to those two Opposing Defendants. However, the same cannot be said as to the other ten Opposing Defendants.

First, the Court considers an illustration of one of Vanilla Underground's accused products against the '788 Patent, followed by a photograph of an actual Vanilla Underground product:



FIG. 1

(Pl.'s Reply to Vanilla Underground, Exs. 7, 8, Dkt. Nos. 59-8, 59-9.) Material differences

between Vanilla Underground's product and Cozy Comfort's claimed design include the size and

shape of the pocket; Vanilla Underground's pocket is larger and wider. The pocket is also lower on the torso, such that there is less space between the bottom of the pocket and the bottom of the garment.

Next, the Court considers an example of Haixuemaoyi's accused product compared against the '788 Patent:



(Pl.'s Reply to Doe Nos. 17, et al. at 5.) This accused product has a pocket that is both wider and taller than the claimed design. In addition, there appears to be a second, smaller pocket stitched on top of the main pocket. And unlike the claimed design, the accused product has mittens attached to the sleeves.

Très Chic Mailanda's and ZC Home Fashion's products deviate significantly in length from the '788 Patent. Below, Très Chic Mailanda's product is depicted on the left and ZC Home Fashions's product is on the right:



(*Id.*) Whereas the claimed design only extends to just above the wearer's knee, both Opposing

Defendants' products extend to the wearer's ankles. An ordinary observer could easily look at

those two products and believe that they are entirely different products from the shorter-in-length

Cozy Comfort product.

      Turning to FSLK's product, its accused product is compared to the claimed design as

shown here:



(Pl.'s Reply to FSLK at 6, Dkt. No. 113.) Whereas the pocket on the claimed design extends

above the armscyes, the pocket on the accused product stops well below the armscyes. And the

accused product's pocket is closer to the bottom of the torso and leaves a smaller gap between the bottom of the pocket and the bottom of the garment. Moreover, FSLK's accused product has a taller pocket than Cozy Comfort's garment.

Below is a comparison of Liny-US's accused product to the claimed design:



FIG. 1

(Pl.'s Reply to Doe Nos. 24, et al. at 3, Dkt. No. 114.) The accused product's pocket is much wider and taller than the pocket in the claimed design, and it is located lower on the wearer's torso. Further, the accused pocket appears to have a second, smaller pocket on top of it.

Next, one of the products offered by Wenlia a/k/a Ehey-EU is compared to the '788 Patent's design:



(*Id.* at 4.) The pocket on the accused product is wider and taller than the pocket in the claimed design, and it leaves a smaller gap between the bottom of the pocket and the bottom of the garment. Moreover, the accused product does not have the downward sloping hem of the accused design. Similar observations can be made as to the height and width of the pockets and the lack of a downward sloping hem with respect to the products offered by JiAmy Co. ltd. and Lovebedding, respectively depicted as follows:





(Pl.'s Reply to Doe Nos. 24, et al. at 4; Pl.'s Reply to Doe No. 25 at 3, Dkt. No. 125.)

As to the Cozy Bliss garment, Cozy Comfort concedes that the downward sloping hemline is absent:



(Pl.'s Reply to Cozy Bliss at 3, Dkt. No. 158.) The pocket on this accused product is also differently shaped from the claimed design and located lower on the torso. Finally, the Court notes that Cozy Comfort does not even undertake any visual comparison involving an accused product offered by Yescool.

In sum, with respect to ten Opposing Defendants, the Court has identified substantial questions regarding whether their products infringe the '788 Patent. For its part, Cozy Comfort makes little effort to engage with the design differences to demonstrate that the accused products nonetheless infringe the patent in suit. Instead, in its reply briefs, Cozy Comfort largely relies on the same boilerplate argument as to all the accused products rather than offering individualized arguments. There is no substantive product-by-product analysis. By failing to account for the variety of allegedly infringing designs that ten of the twelve Opposing Defendants offer for sale, Cozy Comfort has not carried its burden of showing that it is likely to succeed in proving infringement as to those ten Defendants. Accordingly, the Court concludes that Cozy Comfort has failed to satisfy the likelihood of success requirement as to its design patent infringement claims against Vanilla Underground, yescool, Haixuemaoyi, Très Chic Mailanda, ZC Home Fashion, FSLK, Lovebedding, Liny-US, JiAmy Co. ltd., and Wenlia a/k/a Ehey-EU. Because Cozy Comfort fails to make the threshold showing as to those Opposing Defendants, the Court need not consider the remaining preliminary injunction factors.

With respect to the two other Opposing Defendants—Geruitejia and Jindaomaoyl—however, the Court agrees with Cozy Comfort that a visual comparison reveals sufficient similarity between their accused product (recall that the two Opposing Defendants appear to be selling the same design) and the '788 Patent's claimed design to demonstrate a likelihood of success on the merits of Cozy Comfort's design patent infringement claim. The Court also finds

that Cozy Comfort has made a sufficient showing with respect to the Defaulting Defendants who have not appeared and have not challenged the propriety of injunctive relief. *See Dumanian v. Schwartz*, No. 19 C 6771, 2022 WL 2714994, at *8 (N.D. Ill. July 13, 2022) (finding that a party waives any argument in opposition to a motion for a preliminary injunction by failing to file a response brief, although plaintiff still must satisfy its burden of showing its entitlement to injunctive relief). Thus, the threshold likelihood of success showing is satisfied as to Geruitejia, Jindaomaoyl, and the Defaulting Defendants that remain in this case.

## II.     Irreparable Harm and No Adequate Remedy at Law

As Cozy Comfort has made a sufficient showing of a likelihood of success on the merits of its design patent infringement claims against Geruitejia, Jindaomaoyl, and the Defaulting Defendants, the Court proceeds to consider the remaining threshold factors. According to Cozy Comfort, it will suffer irreparable harm in the form of loss of customers' goodwill and reputational harm. Such harms are regularly deemed to be irreparable harms. *E.g.*, *H-D, USA, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21 C 3581, 2021 WL 4459472, at * 3 (N.D. Ill. Sept. 24, 2021). And Cozy Comfort contends that its remedies at law are inadequate because Defendants are businesses located in China or other foreign countries against whom money judgments may prove uncollectible without injunctive relief. *E.g.*, *ABC Prods. v. Individuals, Corps., LLCs, P'ships, & Unincorporated Ass'ns Identified on the Attached Schedule A*, No. 23 C 4131, 2024 WL 1549784, at *5 (N.D. Ill. Jan. 9, 2024) ("Defendants are located in foreign countries and sell their infringing products through online marketplaces, granting them a certain level of anonymity. Thus, ABC Products's ability to collect damages through later legal remedies is bleak, at best. This factor also weighs in favor of injunctive relief." (internal quotation marks and citation omitted)). Notably, neither Geruitejia nor Jindaomaoyl present any argument as to any preliminary injunction factor other than the

21

likelihood of success on the merits. Without opposition, the Court finds that Cozy Comfort has satisfied the remaining threshold requirements as to those two Opposing Defendants and Defaulting Defendants.

### III.    Balancing Analysis

Finally, the Court considers the balance of harms. Cozy Comfort contends that Defendants will suffer no harm that could outweigh the irreparable harm Cozy Comfort would suffer in the absence of a preliminary injunction because they elected to build their business on products that infringe on '788 Patent. In addition, Cozy Comfort argues that the public interest is served by an injunction that protects its intellectual property rights. *See, e.g.*, *John Mezzalingua Assocs., Inc. v. Arris Int'l, Inc.*, 298 F. Supp. 2d 813, 822 (N.D. Ill. 2003) ("The public interest is served by enforcing the rights of persons who have been issued patents by the United States government."). Again, neither Geruitejia nor Jindaomaoyl present any argument as to these preliminary injunction factors. Thus, those Defendants have failed to identify any hardships that they would endure as a result of a preliminary injunction or explain why an injunction does not serve the public interest. Consequently, the balancing analysis weighs in Cozy Comfort's favor. And because Cozy Comfort has satisfied the threshold preliminary injunction factors as to Geruitejia, Jindaomaoyl, and the Defaulting Defendants, the Court grants its motion for a preliminary injunction as to them.

### IV.    Joinder

Before concluding, the Court returns to an issue mentioned briefly above: the propriety of joining the numerous online retailer Defendants in a single action focused on design patent infringement. This case is one of many "so-called 'Schedule A' cases [that] have become something of a cottage industry in this judicial district." *BRABUS GmbH v. Individuals Identified on Schedule A Hereto*, No. 20-cv-03720, 2022 WL 7501046, at *1 (N.D. Ill. Oct. 13, 2022).

Such cases involve a plaintiff who seeks to enforce its intellectual property rights by joining tens, sometimes hundreds of online retailer Defendants, typically foreign-based, "in a single case, for the price of a single filing fee." *Id.* Often, the propriety of joinder is not addressed in Schedule A cases because no defendant appears to challenge it and the district court may be disinclined to raise the issue *sua sponte*. Here, however, Opposing Defendant FSLK argues that it was improperly joined as part of its response to Cozy Comfort's preliminary injunction motion.

For Schedule A cases based on trademark or copyright infringement, joinder is governed by Federal Rule of Civil Procedure 20(a)(2), which allows multiple defendants to be joined in a single action where "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 20 also governed joinder in cases alleging patent infringement until 2011, when the America Invents Act ("AIA") was signed into law. *E.g.*, *Richmond v. Lumisol Elec. Ltd.*, No. 13-1944(MLC), 2014 WL 1716447, at *2 (D.N.J. Apr. 30, 2014). "Before the AIA, it was common for patent holders . . . to sue or attempt to sue multiple infringers in a single suit. The AIA sought to put a stop to this." *Oakley, Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21 C 536, 2021 WL 308882, at *1 (N.D. Ill. Jan. 30, 2021). One provision of the AIA, codified at 35 U.S.C. § 299, imposes a higher standard for joinder in patent cases. *E.g.*, *Digitech Image Techs., LLC v. Agfaphoto Holding GmbH*, No. 8:12-cv-1153-ODW(MRWx), 2012 WL 4513805, at *1 (C.D. Cal. Oct. 1, 2012). That statute provides, in relevant part:

> [P]arties that are accused [patent] infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if—

> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and
>
> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a). It goes on to make clear that accused infringers may not be joined "based solely on allegations that they each have infringed the patent or patents in suit." *Id.* § 299(b).

Despite acknowledging that § 299 governs joinder in patent cases, in response to FSLK's argument, Cozy Comfort relies on caselaw applying Rule 20 to claim that it need only demonstrate a logical relationship between the joined Defendants in this case. In particular, it cites *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), which was decided after the passage of § 299 but involved claims that arose before the statute's enactment. *Id.* At 1355–56. In that case, the Federal Circuit explained that because § 299 lacked retroactive effect, its decision would "only govern a number of cases that were filed before the passage of the new joinder provision." *Id.* At 1356. Indeed, the Federal Circuit expressly emphasized that its "approach to the new provision [*i.e.*, § 299] is not dictated by this case." *Id.* At 1360 n.4.

Since *In re EMC Corp.*, the Federal Circuit does not appear to have issued any binding precedent providing guidance on how to apply §299. Nonetheless, the Court finds persuasive two key principles advanced by other district courts. First, with respect to § 299's requirement that any joined defendants sell the "same" accused product, "same" means that the products are "identically sourced;" it is not enough that the accused products have similarities. *Digitech*, 2012 WL 4513805, at *2–3. Second, the presence of "multiple defendants competing at the same level in the stream of commerce—for example, two defendants both manufacturing accused products who are competitors and not acting in concert—would result in misjoinder under § 299 because

24

they would not satisfy the same transaction or occurrence requirement." *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, No. 14-00169 ACK-RLP, 2014 WL 5580967, at *5 (D. Haw. Oct. 30, 2014) (internal quotation marks omitted). On the other hand, "multiple defendants operating at different levels in the same stream of commerce—for example, one manufacturer defendant (the upstream defendant) and one retailer defendant (the downstream defendant)—can properly be joined pursuant to § 299 where the upstream defendant provides the product to the downstream defendant." *Id.* at *6 (internal quotation marks omitted). These two principles are consistent with Congress's intent in passing § 299 "that parties who make completely different products and have no relation to each other should not be treated as co-defendants." *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356-EJD, 2014 WL 116340, at *5 (N.D. Cal. Jan. 13, 2014) (internal quotation marks omitted).

Applying these principles to the present case, the Court finds that there is a substantial question as to whether Cozy Comfort's claims against all Defendants listed in Schedule A may properly be joined in the same case. The few allegations in the complaint related to the propriety of joinder do not suffice. At bottom, Cozy Comfort claims that joinder is proper because the accused products that Defendants offer for sale "bear similarities and indicia of being related to one another, suggesting that the [products] were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated." (Compl. ¶ 35.) That allegation is entirely conclusory. And, as discussed above, that the accused products are similar does not support joinder under § 299. Indeed, the variations among the accused products' designs demonstrates that Defendants are not selling the "same" product, thereby precluding joinder under the statute. *See, e.g.*, *Nat'l Prods., Inc. v. Arkon Res., Inc.*, No. CV 18-02936 AG (SSx), 2018 WL 5099781, at *2 (C.D. Cal. Aug. 29, 2018) ("[T]he accused products are not the same

25

exact product, but instead simply the same in 'material respects.' In other words, they are actually different products."); *Digitech*, 2012 WL 4513805, at *3 ("[The plaintiff] does not—and cannot—assert that the hundreds of different accused cameras from the various Defendant manufacturers are identical. It is insufficient for [the plaintiff] to rely on the alleged similarities between the infringing digital cameras to satisfy the 'same transaction' requirement for joinder.").

In addition, Cozy Comfort's allegation that Defendants are interrelated is undermined by the sworn declarations offered by Opposing Defendants. For example, Vanilla Underground represents that it is a London-based company that has been operating its Amazon marketplace since 2014, selling thousands of different products, many of which it lawfully licenses from established brands. (Def. Vanilla Underground's Opp'n to Mot. for Prelim. Inj., Ex. 3, Pilkington Decl., Dkt. No. 55-3.) Another Opposing Defendant, Cozy Bliss, states it is a China-based fabric manufacturer that opened its Amazon store under its real identity for the purpose of selling its products and denies having any relationship with any other Defendant. (Da Decl., Dkt. No. 149.)

At the preliminary injunction hearing, Cozy Comfort claimed that it has reason to believe that Vanilla Underground supplied accused products to other Defendants in this case. Even if that allegation were sufficient to show a supplier-retailer relationship between Vanilla Underground and some Defendants for purposes of joinder, it still would not establish a sufficient relationship between Vanilla Underground and Cozy Bliss, since the latter acts as its own supplier. Indeed, Vanilla Underground and Cozy Bliss would be operating at the same level of commerce such that joining them in the same suit would be improper. Similarly, at the retail level, certain Defendants could share a common supplier but still be competitors with each other thereby making their joinder improper. In any case, a common supplier argument is hard to

square with the evidence showing the many variations amongst the accused products and each Defendant's offerings. In short, the wide array of differences in the designs of the accused products sold by Defendants strongly suggests that this case does not involve a transaction or series of transactions related to the same product.

Even if § 299's requirements were satisfied, "joinder may still be refused in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *KPR US, LLC v. LifeSync Corp.*, No. 22-CV-60468-RUIZ/STRAUSS, 2023 WL 4156693, at *4 (S.D. Fla. June 24, 2023) (quoting *In re Nintendo Co.*, 544 F. App'x 934, 939 (Fed. Cir. 2013)). Here, the Court finds Cozy Comfort's design patent infringement claims poorly suited to the Schedule A approach. As discussed above, the infringement analysis should be conducted on a product-by-product basis. Given the numerous differences in the design of the accused products, determining infringement as to all Defendants would require individually evaluating dozens of different garments to determine the significance an ordinary observer might attribute to a difference in pocket placement, a difference in pocket size, a difference in hem line, a difference in garment length, etc. Joinder in these circumstances does not promote judicial economy. *See, e.g.*, *Roadget Bus. Pte. Ltd. v. Individuals, Corps., LLCs, P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, No. 23 C 17036, 2024 WL 1858592, at *7 (N.D. Ill. Apr. 29, 2024) ("[P]resenting dozens or hundreds of defendants in one lawsuit actually undermines judicial economy, because this Court must evaluate the evidence submitted in support of liability and, eventually, damages." (internal quotation marks omitted)).

That said, the Court recognizes that Cozy Comfort also asserts claims against Defendants for trademark infringement, false designation of origin, and violation of the Illinois Uniform Deceptive Trade Practices Act. While those claims were not relied upon for Cozy Comfort's

preliminary injunction motion, it is possible that they provide a basis for joinder that requires consideration before the Court reaches any conclusion regarding severing or dismissing any misjoined claims. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against any party."); *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-CV-00135-JRG, 2019 WL 3253639, at *2 (E.D. Tex. July 19, 2019) ("'Misjoinder' under § 299 may be cured via Rule 21."). Accordingly, the Court will solicit an additional submission from Cozy Comfort regarding joinder.

## CONCLUSION

For the foregoing reasons, Cozy Comfort's motion for a preliminary injunction (Dkt. No. 45) is granted in part and denied in part. The motion is granted as to Defendants Geruitejia and Jiandaomaoyl, and all Defendants who have not appeared and have not been dismissed from the case. The motion is denied as to Defendants Premier P. Ltd d/b/a Vanilla Underground, yescool, Haixuemaoyi, Très Chic Mailanda, ZC Home Fashion, FSLK, Lovebedding, Liny-US, JiAmy Co. ltd., Wenlia a/k/a Ehey-EU, and Cozy Bliss. Further, by June 4, 2024, Cozy Comfort is ordered to show cause in writing why the Court should not sever at least its patent infringement claims into multiple actions that align with the joinder requirements of 35 U.S.C. § 299 or, alternatively, dismiss misjoined claims without prejudice.

ENTERED:

Dated:  May 28, 2024

_____
Andrea R. Wood
United States District Judge